IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | | |
|---|---|---|---|
| **RORY J. CUTAIA,** | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | Civil Action No. 5:11cv00077 | |
| v. | ) | | |
| | ) | | |
| **RADIUS ENGINEERING** | ) | By: | Michael F. Urbanski |
| **INTERNATIONAL, INC., et al.,** | ) | | United States District Judge |
| | ) | | |
| Defendants. | ) | | |

**MEMORANDUM OPINION**

Before the court is plaintiff/counter-defendant Rory Cutaia's ("Cutaia") Motion to Dismiss (Dkt. # 26) the defamation counterclaim filed by defendant/counter-claimant Radius Engineering International, Inc. ("Radius"). The matter has been fully briefed, and the court heard oral argument on December 19, 2011. The court finds that Cutaia's statements are non-actionable expressions of opinion and are otherwise not defamatory as a matter of law. Accordingly, the motion to dismiss must be granted.

**I**

This matter arises out of contracts between Cutaia, Radius, and Green Eye Technology, LLC ("Green Eye"), to construct and install an underground shelter on Cutaia's land in Augusta County, Virginia. Radius manufactures, and Green Eye installs, underground weapons of mass destruction ("WMD") shelters designed to protect people from, during, and after large-scale disasters, both natural and man-made. In 2008, Cutaia entered into a contract with Radius for the construction of such a shelter. Under the agreement, Radius was to manufacture and assemble an Ethos WMD Underground Community ("the Shelter") capable of sustaining seventy-five to two hundred and fifty people in the case of a large-scale disaster. The Shelter was to have the

following component parts: (1) one Earthcom Dome 60 with three connector ports; (2) one Earthcom Dome 60 foundation pan; (3) one composite re-bar for foundation pan; (4) one CAT-25 Luxury Mode (Living Pod); (5) one CAT-25 Generator Pod; and (6) three connector tunnels. The purchase price for the Shelter was $1,648,560. Cutaia and Green Eye entered into a separate contract for the installation of the Shelter, totaling approximately $786,513.75. Cutaia also purchased several hundred acres of property in Augusta County, Virginia, on which to install the Shelter.

During the course of the installation of the Shelter, numerous issues arose concerning the installation, sustainability, and safety of the structure. In March 2011, Green Eye ceased working on the Shelter without completing the installation. As a result of Green Eye's failure to complete the installation of the Shelter, Cutaia sought to engage the services of another underground shelter engineering company, Utah Shelter Systems, Inc. ("Utah Systems"), to repair and complete the Shelter. He also sought advice from Utah Systems as to whether he had grounds for any legal recourse against Radius and Green Eye. On July 29, 2011, Cutaia filed suit against Radius and Green Eye under various theories of liability related to the installation of the Shelter, including breach of contract, breach of express warranties, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, negligence, vicarious liability, negligence through a joint business enterprise, fraud in the inducement, and violations of the Virginia Consumer Protection Act.

Radius has filed a counterclaim against Cutaia alleging that Cutaia made a series of defamatory statements about Radius during his meetings with Paul Seyfried ("Seyfried"), President of Utah Systems, that have caused Radius injury in an amount of not less than $5,000,000. Specifically, the counterclaim alleges that Cutaia made the following defamatory

statements to Seyfried: (1) "he had spent 'a lot of money' on Radius' system and that 'nothing works;'" (2) "the electrical system [of the Shelter] does not work;" (3) "the air handler [of the Shelter] does not work;" (4) "the generator [of the Shelter] does not work;" and (5) Radius was incompetent and did not properly perform its work under the contract.  Counterclaim, Dkt. # 12, at ¶ 18-20.  Radius asserts that the Shelter's electrical system, air handler, and generator were all in working order when it delivered these components to Cutaia and that it performed all of its obligations required under the contract.  Cutaia denies making any defamatory statements about Radius during his meetings with Seyfried and claims that the purpose and intent of the meetings was to show Seyfried the current state of the installation and get information regarding the work needed to correct and complete his investment in the Shelter.  Accordingly, Cutaia has filed the instant motion to dismiss Radius' counterclaim for defamation.

    Cutaia argues that Radius' counterclaim should be dismissed because the alleged defamatory statements regarding the amount of money spent on the Shelter and the failure of the electrical system, the air handler, and the generator to work are all statements of opinion and, therefore, not defamatory.  Cutaia also asserts that the alleged defamatory statement regarding Radius' incompetence and failure to properly perform its contractual obligations lacks specificity because the exact words spoken by Cutaia are not alleged; moreover, this statement is also an expression of opinion that is not actionable under a cause of action for defamation.  In its memorandum in opposition, Radius argues that all five of Cutaia's alleged defamatory statements are not opinions, but rather statements of fact that, when considered in context, are false and defamatory.  Regarding Cutaia's statement that Radius was incompetent, Radius asserts that it adequately plead its defamation claim without the use of quotation marks and that the

3

general statement of incompetence, when combined with Cutaia's other specific statements of fact, is defamatory.

II

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Phillips v. Pitt County Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). While the court must accept the claimant's factual allegations as true, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Rather, plaintiffs must plead enough facts to "nudge[] their claims across the line from conceivable to plausible," and if the claim is not "plausible on its face" it must be dismissed. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Asking for plausible grounds to infer" a claim's existence "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim. Id. at 556. While Iqbal and Twombly may have heralded a change in pleading dynamics, "the law has not transmuted the 12(b)(6) procedural device into summary judgment. So long as a complaint establishes a plausible legal and factual basis for each of the claims contained therein, the claims will stand." Parker v. D.R. Kincaid Chair Co., Inc., No. 5:10cv97-V, 2011 WL 3347905, at *1 (W.D.N.C. Aug. 2, 2011). Determining whether a complaint states a plausible claim for relief is "a context-specific task

4

that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

"A defamation complaint, like any other civil complaint in federal court, must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Hatfill v. N.Y. Times Co., 416 F.3d 320, 329 (4th Cir. 2005), reh'g en banc denied, 427 F.3d 253 (4th Cir. 2005), cert. denied, 547 U.S. 1040 (2006) (quoting Fed. R. Civ. P. 8(a)(2)). While Federal Rule of Civil Procedure 9(b) requires more specific pleading in certain cases, this rule does not apply to defamation claims. Id. See Fed. R. Civ. P. 9(b). "Thus, the usual standards of notice pleading apply in defamation cases . . . ." Hatfill, 416 F.3d at 329.

### III

Under Virginia law, a claim for defamation contains three elements: "(1) publication of (2) an actionable statement with (3) the requisite intent." Jordan v. Kollman, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005); see Hyland v. Raytheon Technical Services Co., 277 Va. 40, 46, 670 S.E.2d 746, 750 (2009); see Fleming v. Moore, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981). An actionable statement is one that is "both false and defamatory." Jordan, 269 Va. at 575, 612 S.E.2d at 206. A defamatory statement is one that tends to "harm the reputation of another [so] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993) (internal quotations omitted). Defamatory words "make the plaintiff appear odious, infamous, or ridiculous." Id. On the other hand, "[m]erely offensive or unpleasant statements are not defamatory." Id. This means that "[t]o be actionable as defamation, a statement must contain a defamatory 'sting.'" Baylor v. Comprehensive Pain Mgmt. Centers, Inc., No. 7:09cv00472, 2011 WL 1327396, at * 7 (W.D. Va. Apr. 6, 2011). Because an actionable

statement must be false, true statements do not give rise to an action for defamation. Thus, in order to be actionable for defamation, "[t]he falsity of a statement and the defamatory 'sting' of the publication must coincide . . . ." Chapin, 993 F.2d at 1092. Likewise, "statements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false . . . ." Jordan, 269 Va. at 576, 612 S.E.2d at 206. An expression of opinion is a statement that is "relative in nature and depend[s] largely upon the speaker's viewpoint . . . ." Gov't Micro Res., Inc. v. Jackson, 271 Va. 29, 40, 624 S.E.2d 63, 69 (2006) (internal quotations omitted). However, "[f]actual statements made in support of an opinion . . . can form the basis for a defamation action." Hyland, 277 Va. 47, 670 S.E.2d at 751. "Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of law to be determined by the court." Jordan, 269 Va. at 576, 612 S.E.2d at 206-07. Thus, "[i]n determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement. . . . Rather, a court must consider the statement as a whole." Hyland, 277 Va. at 47, 670 S.E.2d at 751 (internal citations omitted).

**IV**

Evaluation of a defamation claim requires the court to consider the plain language of the words spoken and the context and general tenor of the message. In order to determine whether an alleged statement is defamatory, the court must "assess how an objective, reasonable reader would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message." Snyder v. Phelps, 580 F.3d 206, 219 (4th Cir. 2009). Several Virginia Supreme Court cases, particularly those within the employment and commercial contexts involving statements regarding matters of private concern, provide some guidance on whether Cutaia's alleged statements can support a defamation claim.

In Fuste v. Riverside Healthcare Association, Inc., 265 Va. 127, 575 S.E.2d 858 (2003), two pediatricians sued their former employer for allegedly defamatory statements made after the pediatricians left their employment to start their own medical practice. Id. at 130, 575 S.E.2d at 860. The pediatricians alleged that their former co-workers told patients and other hospital officials that the pediatricians were "'unprofessional' and 'uncooperative,' that they had 'left suddenly' and 'abandoned their patients,' and that there were 'concerns about their competence,'" among other statements. Id. at 130-31, 575 S.E.2d at 860. The Virginia Supreme Court held that the statements regarding the doctors abandoning their patients and as to whether there were concerns about competence contained "provably false factual connotation[s]," meaning that they "are capable of being proven true or false" because "evidence could be presented to show whether there were, in fact, concerns about the . . . [pediatricians'] competence." Id. at 133, 575 S.E.2d at 861-62 (internal quotations omitted). Likewise, "since the term 'abandon' has a particular connotation in the context of a doctor's professional responsibility to a patient," the statement regarding abandonment "is demonstrably true or false." Id. The court then held that all of the remaining statements, including the statements regarding being unprofessional, uncooperative, and leaving suddenly, were either "dependent on the speaker's viewpoint and . . ., therefore, expressions of opinion," did not prejudice the pediatricians in their new medical practice, or "taken in their plain and natural meaning, [were] . . . not defamatory." Id. (internal quotations omitted).

Hyland v. Raytheon Technical Services Company, 277 Va. 40, 670 S.E.2d 746 (2009), concerned a claim for defamation brought against a plaintiff's former employer for certain statements made by her supervisor concerning the plaintiff's job performance. Id. at 42, 670 S.E.2d at 748. During a performance evaluation, the supervisor made statements about how the

7

plaintiff's performance created "significant gaps in our strategic plans" and about how the plaintiff was "significantly off plan on . . . financial targets. . . ." Id. at 44, 670 S.E.2d at 749. The Virginia Supreme Court found that both of these statements were actionable for defamation because they were "subject to empirical proof" regarding the plaintiff's responsibility for financial losses and underperformance in relation to stated financial percentage targets. Id. The court also noted that the word "significantly" in the supervisor's statements did not take away from the verifiability of the relevant statements in order to make them opinions. Id.

In Chaves v. Johnson, 230 Va. 112, 335 S.E.2d 97 (1985), an architect brought a claim against one of his competitors for alleged defamatory statements included in the competitor's competing bid for an architectural project funded by the city. Id. at 114, 335 S.E.2d at 98-99. In a letter addressed to the city council, the competitor stated that he thought the city should hire him over the other architect because the other architect "has had no prior experience in this type of project" and is charging "over 50% more than what could be considered a reasonable fee." Id. at 115, 335 S.E.2d at 99. The Virginia Supreme Court held that these statements "were, as a matter of law, mere statements of opinion, and thus were not actionable as defamatory words" because "a charge of inexperience is in its nature a relative statement, depending for its import largely upon the speaker's viewpoint." Id. at 118-19, 335 S.E.2d at 101. Likewise, "a charge that professional fees are excessive is largely dependent upon the speaker's viewpoint," and, "[i]n the world of commercial competition, statements by competitors that they can undersell others fall on prospective customers' ears like repetitive drumbeats." Id. at 119, 335 S.E.2d at 101.

In Tronfeld v. Nationwide Mutual Insurance Company, 272 Va. 709, 636 S.E.2d 447 (2006), Jay Tronfeld ("Tronfeld"), a personal injury attorney, filed a claim for defamation

8

against an insurance company. Id. at 711-12, 636 S.E.2d at 448-49. An insurance adjuster met with an injured man after an accident to discuss settlement of the man's personal injury claim. Id. During the meeting, the injured man and the insurance adjuster discussed the selection of an attorney to represent the man in his claim against the insurance company. Id. at 712, 636 S.E.2d at 449. When the man mentioned selecting Tronfeld as his attorney, the insurance adjuster responded by stating that Tronfeld "just takes peoples' money" and that clients of Tronfeld "would receive more money [for their claims] if they had not hired [him] and had dealt with the adjuster [directly]." Id. Tronfeld alleged that these statements were defamation per se, but the trial court sustained the insurance company's demurrer and held that the statements were non-actionable expressions of opinion. Id. On appeal, the Virginia Supreme Court distinguished its decisions in Fuste and Chaves and held that the insurance adjuster's "statements 'are capable of being proven true or false' and thus are actionable in defamation." Id. at 715, 636 S.E.2d at 451 (quoting Chaves, 230 Va. at 118, 335 S.E.2d at 101). The court found that the insurance adjuster's statement regarding Tronfeld taking peoples' money "is capable of disproof by evidence, if adduced, that Tronfeld's clients received monetary or other relief as a result of his legal services." Tronfeld, 272 Va. at 715, 636 S.E.2d at 451. Likewise, the insurance adjuster's statement that Tronfeld's clients would receive more money for their claims by dealing directly with the insurance adjuster "would not be opinion if the evidence showed a settlement or judgment Tronfeld obtained for a client which exceeded the offer made by an insurance company to the client prior to the retention of Tronfeld as his or her legal counsel." Id. at 716, 636 S.E.2d at 451.

      Certain cases from the Virginia Circuit Court regarding alleged defamation within the employment and commercial contexts are also instructive. In Jarrett v. Goldman, 67 Va. Cir.

9

361, 2005 WL 1323115 (City of Portsmouth Cir. Ct. May 31, 2005), a plaintiff sued his former employer for defamation for statements made by his supervisors in connection with the plaintiff's termination.  Id. at *1.  The plaintiff alleged that his supervisors told third-persons that the plaintiff was terminated because "'he sent the wrong information,'" that the plaintiff "'was incompetent and did not know what he was doing,'" and that the plaintiff was fired "'for not making his budget.'"  Id.  The court held that the statement about the plaintiff being incompetent and not knowing what he was doing was "not speech which contains a provably false factual connotation, and therefore, cannot be interpreted as stating actual facts about . . . [the plaintiff] that can form the basis of a common law defamation action."  Id. at *10.  However, the court found that the statement regarding the plaintiff not making his budget "can be objectively tested and proven to be true or false" and "is therefore capable of being defamatory . . . ."  Id. at *10-11.

In Xtreme 4X4 Center, Inc. v. Howery, 65 Va. Cir. 469, 2004 WL 2709602 (City of Roanoke Cir. Ct. Sept. 13, 2004), Xtreme 4X4 Center, Inc. ("Xtreme"), filed a claim for defamation against several defendants for various comments posted on an internet message board sponsored by one of Xtreme's competitors in the four-wheeler industry.  Id. at *1.  The message board comments talked about the owner of Xtreme overcharging for his products, the business practicing poor customer relations and being unfriendly to customers, and a comparison of goods and prices with Xtreme's competitors.  Id. at *1-2.  Xtreme claimed that these statements were defamatory and injured Xtreme's reputation and business, but the court dismissed Xtreme's claim on summary judgment and held that all of the statements were either statements of opinion or were non-defamatory because they did not injure Xtreme's reputation or business.  Id. at *3.

Finally, in John C. Holland Enterprises, Inc. v. Hadfield and the Southeastern Public Service Authority of Virginia, 74 Va. Cir. 288, 2007 WL 5969401 (Chesapeake County Cir. Ct. Nov. 29, 2007), the plaintiff, the owner of a landfill and founding investor of a wetlands restoration organization, sued the defendant, the executive director of a company providing for the disposal of waste in an environmentally sensitive manner, for alleged defamatory statements made during a board meeting. Id. at *1. During an awards portion of the meeting, the defendant stated, "Our customers . . . come to us because of our environmental record; they don't go to our nearby competitors. You won't find our . . . customers going to . . . the John Holland's of the world; they come to SPSA." Id. The plaintiff claimed that the defendant "knew these words would be transcribed in the minutes [of the board meeting] and made public on the [i]nternet," thereby injuring the plaintiff's wetlands restoration business, which depends on the plaintiff's environmental reputation in order to obtain financing. Id. at *1-2. The court, however, sustained the defendant's demurrer and held that the alleged defamatory statements "are expressions of opinion because they cannot reasonably be interpreted as stating actual facts about a person . . . ." Id. at *3.

## V

Considering Cutaia's five statements to Seyfried in light of the cases described above, the court finds that the statements are not defamatory as a matter of law. As a whole, the statements represent nothing more than the opinion of a disgruntled customer seeking to salvage his substantial investment in the Shelter. Plainly, Cutaia's statement about spending a lot of money, concern over Radius' competence, and assertion that Radius did not properly perform its contractual duties are wholly dependent on Cutaia's viewpoint and not subject to objective verification. To be sure, they are, from Radius' perspective, both offensive and unpleasant.

However, as expressions of Cutaia's opinion, they are not defamatory. As such they are similar to other non-actionable expressions of opinion found in the cases, including statements about physicians being unprofessional and uncooperative in <u>Fuste</u>,[1] statements regarding the inexperience and pricing of a competitor in <u>Chaves</u>, statements about an employee being incompetent and not knowing what he was doing in <u>Jarrett</u>, statements by customers on internet message boards in <u>Howery</u>, and statements about a business competitor while receiving an award in <u>Holland Enterprises</u>.

Even Cutaia's statements that are arguably subject to verification, specifically his statements regarding the failure of the Shelter and its electrical system, air handler, and generator to work, are not defamatory as a matter of law. Viewed in the light most favorable to Radius, it does not appear from the face of the pleadings that these statements can be considered to be false. Indeed, in paragraphs 12-15 of the counterclaim, Radius alleges that Green Eye failed to properly install the Shelter and did not complete the installation. The specific allegations are as follows:

> 12. After the delivery of the Shelter at Cutaia's property in Virginia, Green Eye began installing the Shelter.
>
> 13. Green Eye failed to follow instructions provided by Radius with respect to the installation, including failing to use the proper gravel as backfill for two pods that were part of the Shelter and failing to make the excavated hole wide enough to compact the backfill to properly support the structure.

---

[1] In <u>Fuste</u>, the Virginia Supreme Court held that a statement regarding whether there were concerns about the plaintiffs' competence was actionable for defamation because such a statement is "capable of being proven true or false. For example, evidence could be presented to show whether there were, in fact, concerns about the plaintiffs' competence." 265 Va. at 133, 575 S.E.2d at 862. However, a statement about the existence of concerns of competence is different from a general statement about competence itself, which is a non-actionable expression of opinion. The court in <u>Jarrett</u> held that a general statement about the plaintiff being incompetent and not knowing what he was doing was "not speech which contains a provably false factual connotation, and therefore, cannot be interpreted as stating actual facts about [the plaintiff] that can form the basis of a common law defamation action." 67 Va. 361, 2005 WL 1232115 at *10. In this case, Cutaia made a general statement to Seyfried about Radius' incompetence, which, as his opinion, is not legally cognizable as slander.

>    14.    As a result of Cutaia's failure to make the required payments in a timely manner, Green Eye ceased work on the installation.
>
>    15.    The installation of the Shelter was never completed.

Counterclaim, Dkt. # 12, at ¶¶ 12-15.

It is plain from these allegations that even Radius agrees that the Shelter was not working when Cutaia talked to Seyfried in March 2011. Radius asserts that the problems with the Shelter are due to the failings of Green Eye, the installer, rather than with the component parts supplied by Radius. Regardless at whose hands the problem lies, it is clear from Radius' own allegations that the Shelter was not working in March 2011. As such, Cutaia's alleged statements to Seyfried to that effect cannot be considered to be false. In that regard, it is critical to note what is not alleged in the defamation counterclaim. Radius does not allege that Cutaia told Seyfried that the Radius component parts, when delivered, did not work. Rather, the substance of the allegations in paragraphs 18 and 19 of the counterclaim is that Cutaia told Seyfried in March 2011, after Green Eye quit installing the Shelter, that "nothing works." Given the timing of these statements and Radius' own allegations that "Green Eye failed to follow instructions provided by Radius with respect to the installation" and "[t]he installation of the Shelter was never completed," it cannot be plausibly maintained that statements to the effect that the Shelter and its components do not work are false. As such, they cannot be defamatory as a matter of law.

Further, given their context, these statements are more appropriately categorized as non-actionable statements of opinion rather than assertions of verifiable fact. In assessing Cutaia's statements that various component parts of the Shelter did not work, the court must focus on "how an objective, reasonable reader would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message." Snyder,

13

580 F.3d at 219. Considering Cutaia's statements regarding the malfunctioning of the Shelter and its various component parts, it is clear that an objective, reasonable person would interpret the general tenor of those statements to represent the non-actionable frustrations of a dissatisfied customer expressing his opinion on the quality of the product he purchased.

The context of Cutaia's statements to Seyfried is most like that of the statements of opinion in Chaves regarding competition for an architectural project, the non-defamatory statements by customers on an internet message board in Howery, and the statements regarding a competitor in the waste management industry in Holland Enterprises. The courts in those cases recognized that statements made by business competitors regarding their products and services, as well as statements made by customers regarding their satisfaction with a certain product or service, are a natural part of commercial interactions. Thus, even if these types of statements can be verified as true or false, a reasonable interpretation of the statements within the commercial context in which they are offered indicates that they are merely expressions of opinion of an upset consumer lacking the necessary defamatory sting to make them actionable under Virginia law. As long ago as 1935, the Virginia Supreme Court held that a statement made about a contractor "doing such slow work," even if regarded as a statement of fact and untrue, was not defamatory. James v. Haymes, 163 Va. 873, 885, 178 S.E. 18, 23 (1935). The same can be said about similar statements alleged to have been made by Cutaia to Seyfried to the effect that the Shelter and its various component parts did not work. Such statements, made by a consumer to a shelter supplier in an effort to remedy the problems with the Shelter, simply do not render Radius "odious, infamous, or ridiculous." Chapin, 993 F.2d at 1092. As such, the court finds that Cutaia's statements are non-actionable expressions of opinion for which Radius has failed to state a claim for relief as a matter of law.

Accordingly, it is **ORDERED** that Cutaia's Motion to Dismiss (Dkt. # 26) is **GRANTED**, and Radius' counterclaim is **DISMISSED**. The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered:  February 16, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge